UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MARICELA BELTRAN,

Plaintiff,

v.

KILOLO KIJAKAZI, Acting Commissioner of Social Security,[1]

Defendant.

Case No. 1:21-cv-00603-JLT-BAM

**FINDINGS AND RECOMMENDATIONS REGARDING CROSS MOTIONS FOR SUMMARY JUDGMENT**

(Docs. 23, 26)

FOURTEEN-DAY DEADLINE

**Findings and Recommendations**

**INTRODUCTION**

Plaintiff Maricela Beltran ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to Magistrate Judge Barbara A. McAuliffe for issuance of findings and recommendations.

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit.

Having considered the briefing and record in this matter, the Court finds that the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence in the record as a whole and based upon proper legal standards. Accordingly, this Court will recommend denying Plaintiff's motion for summary judgment, granting Defendant's cross-motion for summary, and affirming the agency's determination to deny benefits.

**FACTS AND PRIOR PROCEEDINGS**

Plaintiff filed an application for supplemental security income on December 10, 2017. AR 282.[2] Plaintiff alleged that she became disabled on October 12, 2016, due to lupus, depression, anxiety, GERD, and hiatal hernia. AR 310. Plaintiff's application was denied initially and on reconsideration. AR 190-94, 205-09. Subsequently, Plaintiff requested a hearing before an ALJ. Following a hearing, ALJ Matthew Kawalek issued an order denying benefits on August 11, 2020. AR 27-45, 128-57. Thereafter, Plaintiff sought review of the decision, which the Appeals Counsel denied, making ALJ Kawalek's decision the Commissioner's final decision. AR 9-14. This appeal followed.

**Hearing Testimony**

ALJ Kawalek held a telephonic hearing on June 30, 2020. Plaintiff appeared in Bakersfield California, with her attorney, Miguel Lopez. AR 131. Dr. Dennis Duffin, an impartial vocational expert, also appeared and testified. AR 133.

In response to questions from her attorney, Plaintiff testified that her neck, shoulders, back, thigh, arms, hands, wrists, legs, knees, feet and joints all cause her pain. She has pain all the time in her lower back and sharp pains in her knees, which are weak. She can stand 15 to 30 minutes without having to sit down and can sit for no more than 30 minutes. In an eight-hour day, she cannot sit more than two hours total or stand more than two hours total. At home, she spends most of her time reclining with her legs elevated and lying down. She can hardly walk because of pain and cannot walk a full two blocks without stopping. She cannot lift more than 20 pounds and cannot bend down to pick

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

something up. She also has problems with her upper extremities, lifting her arms up high causes pain and weakness. She does not have problems holding light things. She feels tiredness and fatigue all the time. She also has trouble with depression and anxiety, along with problems concentrating and focusing. AR 139-44.

When asked to describe what she does at home, Plaintiff testified that she just reclines, lies down, sits, watches TV, and reads. She is not able to do housework. She does not wash dishes, do laundry, or sweep floors. She has a government employee (IHSS) that helps with the chores. AR 144-45.

Plaintiff testified that she has side effects from her medication. These side effects include drowsiness, sleepiness, and nauseousness. She takes Norco for pain. AR 145-46. She also has headaches about three time a week. AR 146.

In response to questions from the ALJ, Plaintiff testified that she still has a commercial driver's license, but she has not returned for the physical. The IHSS home provider has been helping for three years and was recommended by her primary physician. AR 147.

Following Plaintiff's testimony, the ALJ elicited testimony from the VE. The VE characterized Plaintiff's past work as hospital security guard and customer service or salesclerk. AR 150. The ALJ then asked the VE hypothetical questions. For the first hypothetical, the ALJ asked the VE to assume an individual of Plaintiff's age, education and work history. This individual would be limited to occasionally lifting and carrying 10 pounds, frequently lifting and carrying less than 10 pounds, could stand and/or walk two hours of an eight-hour workday, sit six hours of eight-hour workday, could only occasionally operate foot controls with the bilateral lower extremities, could never climb ladders, ropes, or scaffolds, could only occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. This individual could frequently reach, handle, finger, feel, or operate hand controls with the bilateral upper extremities, could tolerate no more than occasional exposure to temperature extremes, wetness, and vibration, and could tolerate no exposure to hazards, including unprotected heights, commercial driving, or operating heavy machinery. The VE testified that this hypothetical individual could not perform either of Plaintiff's past jobs. The VE further testified that this individual could perform other work in the national economy, such as document specialist or

scanner, hand painter or stainer, or lens block gauger (which set the blanks for eyeglass manufacturing). AR 150-51.

For the second hypothetical, the ALJ asked the VE to assume an individual of the same age, education, and work history. This individual would be limited to occasionally lifting and carrying 10 pounds, frequently lifting and carrying less than 10 pounds, could stand and/or walk two hours of an eight-hour workday, could sit for less than six hours of an eight-hour workday, and would need a rest break from sitting for every 45 minutes. This individual could only occasionally stoop or climb ramps and stairs, could never balance, kneel, crouch, crawl, or climb ladders, ropes, or scaffolds, but could frequently reach. This individual could tolerate no more than occasional exposure to humidity or noise and could tolerate no exposure to temperature extremes, wetness, vibration, pulmonary irritants, or workplace hazards. The VE testified that all competitive work would be eliminated based on the standing/walking and sitting limitations. AR 152-53.

For the third hypothetical, the ALJ asked the VE to consider that the individual from hypothetical one was limited to only occasionally reaching, handling, fingering, feeling, or operating hand controls with the bilateral upper extremities. The VE testified that none of the jobs would match, but there would be other jobs, such as a call out operator, who checks references, with approximately 8,000 jobs, and a surveillance system monitor, with approximately 4,600 jobs. The ALJ confirmed that he would not take the two occupations totaling just over 12,000 jobs to be a significant number of jobs. AR 153-54.

For the next hypothetical, the ALJ asked the VE to consider that the individual from the first hypothetical required three to four unscheduled breaks throughout the workday of five to ten minutes in duration. The VE testified that this would eliminate all work. If the individual was off task more than 5% of the workday, that also would eliminate all work. AR 154-55. If the individual was expected to miss more than one day of work per month, missing two or more days every month on an ongoing basis, this also would eliminate all work. AR 155.

The VE confirmed that nothing in his testimony was inconsistent with the Dictionary of Occupational Titles, but specific hours of sitting, standing, or walking, the necessity to rest, additional breaks, off task, or absences were based on the VE's experience and training. AR 155.

**Medical Record**

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

**The ALJ's Decision**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act. AR 30-45. Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 10, 2017, the application date. AR 32-33. The ALJ identified the following severe impairments: bursitis/tendonitis of the bilateral shoulders; osteoarthritis of the bilateral knees; left calcaneal spur; osteophyte of the left ankle; left plantar fasciitis; degenerative joint disease and stenosis of the cervical spine; degenerative arthritis; spondylosis, disc protrusion and disc disease of the lumbar spine with radiculopathy; thoracic spondylosis with thoracic radiculopathy; undifferentiated connective tissue disease (including the diagnoses of Epstein-Barr virus and other forms of systemic lupus erythematous); inflammatory arthritis (including the varied diagnoses of polyarthritis, rheumatoid arthritis, generalized lupus arthritis, and inflammatory poly arthropathy); and morbid obesity. AR 33-35. The ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments. AR 35-36.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform a reduced range of sedentary work. She could lift/carry 10 pounds occasionally, less than 10 pounds frequently, and could stand and/or walk 2 hours and sit 6 hours of an 8-hour workday. She could occasionally operate foot controls with the bilateral lower extremities, but she could never climb ladders, ropes, or scaffolds, and could occasionally balance, stoop, kneel, crouch, crawl, or climb ramps and stairs. She could frequently reach, handle, finger, feel, or operate hand controls with the bilateral upper extremities. She could tolerate no more than occasional exposure to temperature extremes, wetness, or vibration, and could have no exposure to hazards, including unprotected heights, operating heavy machinery, or commercial driving. AR 37-44. With this RFC, the ALJ found that Plaintiff could not perform any past relevant work, but that there were jobs in the national economy that Plaintiff could perform, such as document specialist,

hand painter/stainer, and lens block gauger. AR 44-45. The ALJ therefore concluded that Plaintiff had not been under a disability since December 10, 2017, the date her application was filed. AR 45.

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

**DISCUSSION**[3]

Plaintiff contends that the ALJ erred by finding the opinions from C. Slaughter, PAC, and Dr. Martinez not persuasive. Plaintiff also contends that the ALJ failed to include work-related limitations in the RFC consistent with the nature and intensity of her limitations and failed to offer any reasons to reject Plaintiff's subjective complaints. (Doc. 23 at 13.)

**A. Evaluation of Medical Opinions**

Plaintiff argues that the ALJ erred in her evaluation of the opinions of C. Slaughter, PAC, and Marilyn Martinez, Ph.D., and did not properly consider the supportability and consistency of those opinions. (Doc. 23 at 11.)

**1. Legal Standard**

Because Plaintiff applied for benefits after March 27, 2017, her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions. 20 C.F.R. § 416.920c. Under the new regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 416.920c(a). The Commissioner evaluates the persuasiveness of the medical opinions based on the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 416.920c(c)(1)-(5). Supportability and consistency are the most important factors. 20 C.F.R. § 416.920c(b)(2). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 416.920c(c)(1); *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 416.920c(c)(2); *Woods*, 32 F.4th at 792.

---

[3] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

Ninth Circuit case law preceding the new regulations afforded deference to the medical opinions of treating and examining physicians. Indeed, prior to the current regulations, the Ninth Circuit required ALJs to provide clear and convincing or specific and legitimate reasons for rejecting the medical opinions of treating or examining physicians. These standards of articulation no longer apply in light of the new regulations, and the ALJ is not required to provide "specific and legitimate reasons" to discount the medical opinions. *See Woods,* 32 F.4th at 792 (finding revised social security regulations "clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant"). The Ninth Circuit has clarified that "under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Id.* "The agency must 'articulate ... how persuasive' it finds 'all of the medical opinions' from each doctor or other source, . . . and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id.* (internal citations omitted).

**2. Analysis**

<u>PAC Slaughter</u>

On June 26, 2020, PAC Slaughter completed a Physical Residual Functional Capacity Assessment form, identifying Plaintiff's primary diagnosis as Rheumatoid Arthritis and her secondary diagnosis as Systemic Lupus Erythematosus. AR 936-43. As to exertional limitations, PAC Slaughter opined that Plaintiff could occasionally and frequently lift and/or carry less than 10 pounds, she had limited ability to push and/or pull in both her upper and lower extremities, and she could sit with normal breaks for a total of less than about 6 hours in an 8-hour workday. PAC Slaughter identified no period of time that Plaintiff could stand/walk, even with normal breaks. AR 937. PAC Slaughter explained that Plaintiff did not "have the strength to consistently lift, push, pull, walk, stoop, bend or engage in repetitive movements" and she could not sit "greater than 30-45 minutes without resting." AR 937. As to postural limitations, PAC Slaughter opined that Plaintiff could occasionally climb ramps and stairs and occasionally kneel, but she could never climb ladders, ropes, or scaffolds, balance, kneel, crouch, or crawl. AR 938. As to manipulative limitations, PAC Slaughter opined that Plaintiff was limited in reaching all directions (including overhead). AR 939. Plaintiff did not have

any visual or communicative limitations. As to environmental limitations, PAC Slaughter opined that Plaintiff must avoid even moderate exposure to humidity and noise and must avoid all exposure to extreme cold, extreme heat, wetness, vibration, fumes, odors, dusts, gases, poor ventilation, and hazards. PAC Slaughter indicated that these environmental limitations aggravated Plaintiff's joint pain and ability to cope with her limitations. AR 940. PAC Slaughter attributed Plaintiff's symptoms to her rheumatoid arthritis, systemic lupus erythematosus, and degenerative joint disease in her thoracic and lumbar spine. PAC Slaughter opined that the increasing severity of Plaintiff's symptoms was consistent with the medical and non-medical evidence, with extremes in temperature in the environment making her symptoms worse and her pain causing difficulty with memory and cognitive function. AR 941.

The ALJ found the medical opinion of PAC Slaughter not persuasive, and reasoned as follows:

> PAC Slaughter supported her opinion with her exam findings, including the claimant's symptoms from her rheumatoid arthritis, lupus, and degenerative disc disease in her thoracic and lumbar spine. PAC Slaughter's records do not corroborate her extensive limitations, particularly from an objective standpoint. PAC Slaughter relies on subjective allegations that are rarely, if ever, documented in her own notes. The evidence of her varied physical exams is inconsistent with PAC Slaughter's opinion. For example, the claimant's varied range of motion in her spine is inconsistent with finding she can never balance, crouch, kneel, or crawl. Additionally, the stiffness and numbness in her wrists and hand is more consistent with the more specific finding of the residual functional capacity that she can frequently perform manipulative activities. For these reasons, I find PAC Slaughter's opinion not persuasive.

AR 42.

Plaintiff argues that the ALJ did not appropriately address the factors of supportability and consistency in discussing the persuasiveness of PAC Slaughter's opinion. The Court disagrees. First, with respect to supportability, the ALJ found that PAC Slaughter's extensive limitations were not corroborated by her own treatment notes, relying instead on subjective allegations. AR 42. This portion of the ALJ's decision is not a model of clarity, but because the ALJ's "path may reasonably be discerned," the court will still defer to the ALJ's decision. *Wilson v. Berryhill*, 757 F. App'x 595, 597 (9th Cir. 2019). For instance, the ALJ referenced PAC Slaughter's varied physical examination findings, which showed that Plaintiff had a normal gait in November 2019, an antalgic gait in January 2020, and a normal gait again in March 2020, with no tenderness in her spine. AR 38, 594, 596, 598.

PAC Slaughter's examination findings also identified a normal gait in February, March, April, and May 2019. AR 611, 613, 615, 617. These examination findings are inconsistent with PAC Slaughter's apparent indication that Plaintiff could not stand and/or walk for any period of time. As another example, PAC Slaughter's examinations included a notation in February 2019 that Plaintiff had tenderness in the bilateral shoulders, with limited abduction, but good internal and external rotation, but the remainder of the examinations identified no objective findings regarding Plaintiff's shoulders. AR 617. The absence of objective findings is inconsistent with PAC Slaughter's opinion that Plaintiff was limited in reaching in all directions, including overhead.

Second, with respect to consistency, the ALJ further noted that the varied physical exams were inconsistent with PAC Slaughter's opinion. AR 38, 47. In the opinion, the ALJ identified the varied physical examinations at issue. The ALJ noted that in 2018, Plaintiff had an abnormal gait, she could not heel or toe walk, her straight leg test was positive, her right upper extremity flexor and extensor strength was four-out-of-five, and she had some reduced range of motion throughout her spine along with tenderness. AR 38, 398, 572-73, 584. However, by August 2018, she had normal strength in both her upper and lower bilateral lower extremities. AR 883. As noted, she also had a normal gait in November 2019, an antalgic gait in January 2020, and a normal gait again in March 2020, with no tenderness in her spine. AR 38, 594, 596, 598.

The ALJ also found Plaintiff's varied range of motion in her spine inconsistent with PAC Slaughter's finding Plaintiff could never balance, crouch, kneel, or crawl. AR 47. The ALJ identifies an examination indicating that Plaintiff had "some reduced range of motion throughout her spine," with no other indication of reduced range of spine motion. AR 38, 583. Plaintiff has not identified other findings of reduced spine range of motion in the record to undermine the ALJ's determination.

The ALJ further found the stiffness and numbness in Plaintiff's wrists and hand to be more consistent with a finding that Plaintiff could frequently perform manipulative activities. AR 47. According to the record, and as noted by the ALJ, Plaintiff sometimes had numbness and stiffness in her hands. AR 39, 629, 641, 799. However, Plaintiff generally had a normal range of motion in her wrists and hands. AR 39, 551, 584. Although at one examination she had diffuse swelling throughout her hands and wrists, there was no tenderness over the metacarpophalangeal joints, proximal

interphalangeal joints, or distal interphalangeal joints. AR 39, 620. Her Tinel's sign and Phalen's sign tests were negative. AR 584.

Based on the foregoing, the Court finds that the ALJ appropriately considered the factors of supportability and consistency in evaluating PAC Slaughter's opinion.

Marilyn Martinez, Ph.D.

On March 8, 2018, Dr. Martinez, a licensed clinical psychologist, completed a consultative mental status examination. AR 503-08. Plaintiff reported completing some self-dressing, self-bathing, and personal hygiene, but required assistance with getting dressed, taking a shower, housecleaning, cooking, shopping, and cutting her toenails. She was able to drive and had a commercial driver's license, but her outside activities were nonexistent. She was able to pay bills, go out alone, focus attention during the interview and had no difficulty completing household tasks or making decisions. AR 505. On mental status examination, Plaintiff's thought process and organization were linear and within normal limits. Her mood was euthymic and her affect within normal limits and congruent with thought content. Plaintiff was not tearful, and denied feelings of hopelessness, helplessness, and worthlessness. AR 505. Her speech was normal and clearly articulated, but she appeared to be of limited intellectual functioning. AR 505-06. She did not know the name of the current president, the capital of the United States, or the capital of California. Plaintiff's concentration, calculation, and abstract thinking appeared grossly intact. Her judgment appeared intact, but her insight appeared limited. AR 506.

Dr. Martinez opined that Plaintiff's presentation was consistent with diagnoses of generalized anxiety disorder, major depressive disorder – recurrent, and rule out intellectual disability. With regard to generalized anxiety disorder, Dr. Martinez stated that Plaintiff presented with excessive anxiety and worry, occurring more days than not for a least 6 months. Her anxiety and worry were associated with being easily fatigued, difficulty concentrating, sleep disturbance and general disease. Dr. Martinez opined that these symptoms caused clinically significant distress in multiple areas, including occupational, social, and relational. AR 507. With regard to depressive disorder, testing suggested that Plaintiff had difficulty with sustained effort and attention due to depressive symptoms. Plaintiff reported depressed mood, loss of interest in pleasure, and significant changes to weight and/or

appetite. She also reported sleep disturbance, fatigue, feelings of worthlessness, and diminished ability to think, concentrate and make decisions. Dr. Martinez opined that these symptoms caused significant impairment socially and occupationally as Plaintiff did not engage in social exchange with others and found the day-to-day requirements of sustained employment difficult. AR 507.

Dr. Martinez indicated that Plaintiff's prognosis was poor due to physical decline. Based on the examination, Dr. Martinez concluded that Plaintiff had no impairment in the ability to understand, remember, and carry out simple one-or-two-step job instructions, moderate impairment in the ability to do detailed and complex instructions, marked impairment due to pain in the ability to relate and interact with co-workers and the public, marked impairment due to anxiety in the ability to maintain concentration and attention, persistence, and pace, marked impairment due to pain in the ability to associate with day-to-day work activity, including attendance and safety, no impairment in the ability to accept instructions from supervisors, marked impairment due to pain in the ability to maintain regular attendance in the workplace and perform work activities on a consistent basis, and moderate impairment in the ability to perform work activities without special or additional supervision. AR 507-08.

The ALJ found Dr. Martinez's opinion not persuasive and reasoned as follows:

> Dr. Martinez's psychiatric exam does not support her opinion. The exam was entirely normal and did not support any moderate or marked limitation in any area. Additionally, Dr. Martinez supported her opinion by referencing the claimant's pain. The claimant's pain is subjective and beyond a psychologists [sic] purview to evaluate. The evidence of the claimant's daily activities is inconsistent with Dr. Martinez's opinion. For example, the claimant cares for her thirteen-year-old son, which is inconsistent with finding significant impairments in her performing activities without special instructions or that were complex or detailed in nature. Additionally, the claimant enjoys watching movies with family and friends, which is inconsistent with Dr. Martinez's severe restrictions on the claimant's interactions with others. For these reasons, I find Dr. Martinez's opinion not persuasive.

AR 43.

The Court finds that the ALJ properly evaluated the persuasiveness of Dr. Martinez's opinion. First, the ALJ determined that Dr. Martinez's examination did not support her opinion, noting the examination was normal and not supportive of any moderate or marked limitations. AR 43. This reasoning invokes the supportability factor, which means the extent to which a medical source

supports the medical opinion by explaining the "relevant ... objective medical evidence." 20 C.F.R. § 416.920c(c)(1). Dr. Martinez's normal mental status examination findings generally showed that Plaintiff's thought processing and organization were linear and within normal limits, her mood was euthymic, her affect within normal limits, she was not tearful, and she denied feelings of hopelessness, helplessness, and worthlessness. AR 505. Plaintiff was oriented to time, place, person, and the purpose of the evaluation. AR 506. Her memory functioning, concentration, and calculation appeared grossly intact. AR 506. She was able to pay bills and handle cash appropriately, go out alone, focus attention during the interview, and reported no difficulty completing household tasks or making decisions. AR 505. The ALJ's determination that these normal findings did not support any moderate or marked limitations is supported by substantial evidence.[4]

Second, the ALJ found that Dr. Martinez's opinion was not consistent with Plaintiff's daily activities. AR 43. This reasoning properly invokes the consistency factor. *Woods*, 32 F.4th at 792. In this instance, the ALJ specifically considered Plaintiff's ability to care for her thirteen-year-old son, concluding that it was inconsistent with Dr. Martinez's finding of significant impairments in Plaintiff performing activities without special instructions or that were complex or detailed in nature. AR 43, 504. Further, as noted, Plaintiff indicated that she was able to pay bills and handle cash, go out alone, and had no difficulty completing household tasks or making decisions. AR 505. Additionally, the ALJ considered the fact that Plaintiff reported enjoying watching movies with family and friends conflicted with Dr. Martinez's severe restrictions on the claimant's interactions with others. AR 43, 505. Indeed, Dr. Martinez noted Plaintiff's relationships with her family and friends were reported to be good. AR 505.

---

[4] The ALJ also found Dr. Martinez's opinion unpersuasive and unsupported because it was based on Plaintiff's pain. This does not appear to be a valid reason. *Cf. Farris v. Barnhart*, 147 F. App'x 638, 639 (9th Cir. 2005) (noting precedent foreclosed rejecting psychologist's opinion because it was based on the combined impact of pain and mental impairment). While this reason may have been invalid, any such error is harmless because the ALJ provided at least one other valid reason in addressing the supportability factor. *See Jones v. Kijakazi*, No. 1:20-CV-01689-SKO, 2022 WL 4082245, at *7 (E.D. Cal. Sept. 6, 2022) (finding it unnecessary to address one arguably improper reason in finding opinion unpersuasive where the ALJ provided other valid reasons in addressing the supportability factor); *Barber v. Astrue*, No. 1:10–cv–01432–AWI–SKO, 2012 WL 458076, at *13 (E.D. Cal. Feb. 10, 2012) (finding harmless error where the ALJ "stated other valid reasons" for rejecting a physician's opinion).

To the extent Plaintiff suggests an alternative interpretation of the evidence, this is not sufficient to establish reversible error. If the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020), citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**B. Plaintiff's Subjective Complaints**

Plaintiff argues that the ALJ failed to offer any clear or convincing reasons to reject her subjective complaints.

In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. *Id.* at 1015.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, but discounted her statements concerning the intensity, persistence and limiting effects of those symptoms. AR 28. The ALJ was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.

The Court finds that the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints. First, the ALJ found that the medical record was not entirely consistent with the degree of limitation alleged. AR 38. Although lack of supporting medical evidence cannot form the sole basis for discounting testimony, it is a factor that the ALJ can consider. *See Burch*, 400 F.3d at 681. For instance, the ALJ considered x-rays and imaging of Plaintiff's spine, noting that cervical spine x-rays in May 2018 showed only "mild" degenerative disc narrowing at C6-C7 and "moderate" spondylosis a C6-C7, thoracic spine imaging showed only generalized, "moderate" thoracic spondylosis, and a lumbar spine MRI in August 2018 revealed only "minimal" spondylosis and a small disc extrusion resulting in "mild" bilateral recess stenosis. AR 38, 686 (cervical spine); 490 (thoracic spine); 654 (MRI). The ALJ also considered evidence, discussed above, that her gait varied

on examination. AR 38. Additionally, the ALJ considered objective evidence that Plaintiff generally had normal range of motion in her shoulders, elbows, wrists, and joints in hands, as well as normal range of motion in her hips, knees, and ankles. AR 39, 551, 584 (shoulders, elbows, wrists, joints in hands).

Second, the ALJ also considered Plaintiff's overall, relatively conservative course of treatment. AR 39. An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's subjective complaints. *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of conservative treatment sufficient to discount claimant's testimony regarding severity of impairment). Here, the ALJ noted that Plaintiff treated her back with lumbar injections and medications, including Norco, and her knee pain with bilateral injections and the same medications used to treat her other impairments. AR 39, 40, 511-14, 522-34, 580, 638.

Third, the ALJ considered that Plaintiff found relief from her spine pain (radiating into her hips and lower extremities) with treatment, such that the pain was no longer debilitating. AR 39. Impairments that can be controlled effectively with medication are not disabling. *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). According to the record, and as noted by the ALJ, Plaintiff reported that her regime gave her "moderate" relief and her pain eased up to the point where it was not debilitating. Given this relief, the claimant's pain management specialist decided to continue with her current medications. AR 39, 574, 700 (March 2020).

Fourth, the ALJ considered Plaintiff's failure to pursue certain treatment. AR 39. An ALJ may properly consider a failure to pursue prescribed treatments in evaluating a claimant's subjective complaints. *See Burch*, 400 F.3d at 681 ("That Burch's pain was 'not severe enough to motivate [her] to seek [these forms of] treatment,' . . . even if she sought some treatment, is powerful evidence regarding the extent to which she was in pain"); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) (finding that "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" to be a relevant factor in assessing a claimant's subjective complaints); *Schilling v. Comm'r of Soc. Sec.*, No. 1:21-cv-01268-SAB, 2022 WL 17418343, at *9 ("the failure to pursue prescribed treatments is also a relevant consideration to the ALJ's credibility determination"). The ALJ noted Plaintiff's report that she tried physical therapy, but said it made her pain worse. However,

physical therapy records showed that the Plaintiff completed her evaluation but did not attend any sessions. AR 39, 625, 880 (referred for physical therapy 2-3 times weekly for six weeks; did not attend any sessions).

Based on the above, the Court finds that the ALJ did not err in the evaluation of Plaintiff's subjective complaints. However, even if one of the reasons for discounting Plaintiff's subjective complaints was invalid, any such error is harmless because the ALJ provided other valid reasons for discounting Plaintiff's subjective testimony. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-63 (9th Cir. 2008) (finding that two invalid reasons to reject a claimant's testimony were harmless error where the ALJ articulated two other reasons supported by substantial evidence in the record); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) ("several of our cases have held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record").

**CONCLUSION AND RECOMMENDATION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, IT IS HEREBY RECOMMENDED as follows:

1. Plaintiff's motion for summary judgment and appeal from the administrative decision of the Commissioner of Social Security be denied;
2. Defendant's cross-motion for summary judgment be granted, affirming the agency's determination to deny benefits; and
3. The Clerk of this Court be directed to enter judgment in favor of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security, and against Plaintiff Maricela Beltran.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, as required by 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, the parties may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that the failure to file objections within the specified time

may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **February 17, 2023**

/s/ Barbara A. McAuliffe
UNITED STATES MAGISTRATE JUDGE