# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARICELA BELTRAN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI[1],<br>Acting Commissioner of Social Security,<br><br>　　　　Defendant. | Case No.: 1:21-cv-0603 JLT BAM<br><br>ORDER DECLINING THE FINDINGS AND RECOMMENDATIONS, GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING THE COMMISSIONER'S CROSS-MOTION, AND REMANDING THE ACTION FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)<br>(Docs. 23, 26, and 28)<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF PLAINTIFF AND AGAINST DEFENDANT COMMISSIONER OF SOCIAL SECURITY |

Maricela Beltran seeks judicial review of a final decision of the Commissioner of Social Security denying her application for supplemental security income under Title XVI of the Social Security Act. (Doc. 1.) Plaintiff asserts the administrative law judge erred in addressing the medical record and evaluating Plaintiff's subjective statements concerning her impairments. (Doc. 23.) The Commissioner contends the administrative decision should be upheld. (Doc. 26.) For the reasons set forth below, the matter is remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant.

**I.     Findings and Recommendations of the Magistrate Judge**

Plaintiff asserts the ALJ erred in evaluating the medical opinions of C. Slaughter, Physician's Assistant-Certified, and Marilyn Martinez, Ph.D.  (Doc. 23 at 13-19.)  As an initial matter, the magistrate judge observed that Plaintiff applied for benefits after March 27, 2017, and as a result "her claim is governed by the agency's new regulations concerning how an ALJ must evaluate medical opinions." (Doc. 28 at 7, citing 20 C.F.R. § 416.920c.)

The magistrate judge found that "the ALJ appropriately considered the factors of supportability and consistency in evaluating PAC Slaughter's opinion."  (Doc. 28 at 11.)  In so finding, the magistrate judge acknowledged the decision of the ALJ "is not a model of clarity" regarding supportability but found "the ALJ's path may be reasonably discerned." (*Id.* at 9, internal quotation marks omitted.)  The magistrate judge noted the ALJ referenced "varied physical examination findings," and the magistrate judge identified examination findings that were inconsistent with Slaughter's limitations with standing, walking, and reaching.  (*Id.* at 9-10.) The magistrate judge also found the ALJ properly evaluated the consistency factor and identified inconsistencies between Slaughter's opinion with "varied physical exams." (*Id.* at 10-11.)

Next, the magistrate judge found that "the ALJ properly evaluated the persuasiveness of Dr. Martinez's opinion." (Doc. 28 at 12.)  The magistrate judge noted the ALJ found the opinion was "unpersuasive and unsupported because it was based on Plaintiff's pain," and found this did "not appear to be a valid reason." (*Id.* at 13, n.4) Nevertheless, the magistrate judge observed, "the ALJ determined that Dr. Martinez's examination did not support her opinion, noting the examination was normal and not supportive of any moderate or marked limitations," and "[t]his reasoning invokes the supportability factor." (*Id*. at 12.)  The magistrate judge found the ALJ "properly invoke[d] the consistency factor" by finding "Dr. Martinez's opinion was not consistent with Plaintiff's daily activities," including her ability to care for her 13-year-old son, pay bills, go out alone, handle household chores, make decisions, and watch movies with family and friends. (*Id.* at 13.)

Finally, the magistrate judge found "the ALJ provided clear and convincing reasons to discount Plaintiff's subjective complaints." (Doc. 28 at 14.)  In so finding, the magistrate judge

observed that "the ALJ found that the medical record was not entirely consistent with the degree of limitation alleged." (*Id.* at 14, citing AR 38 [Doc. 19-1 at 43].)  The magistrate judge determined, "the ALJ also considered Plaintiff's overall, relatively conservative course of treatment" and Plaintiff's "relief from her spine pain … with treatment." (*Id.* at 15, citing AR 39 [Doc. 19-1 at 44].)  The magistrate judge also opined that "the ALJ considered Plaintiff's failure to pursue certain treatment," because Plaintiff reported to her physician that "she tried physical therapy," and it made her pain worse, but the "physical therapy records showed that the Plaintiff completed her evaluation but did not attend any sessions." (*Id.* at 15-16, citing AR 39, 625, 880 [Doc. 19-1 at 44, 630, 885].)  Therefore, the magistrate judge concluded "the ALJ did not err in the evaluation of Plaintiff's subjective complaints." (*Id.* at 16.)

The magistrate judge found "the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards." (Doc. 28 at 16.)  Therefore, the magistrate judge recommended that "Plaintiff's motion for summary judgment and her appeal from the administrative decision of the Commissioner of Social Security be denied" and the determination to deny benefits be affirmed. (*Id.*)

## II.     Objections

Plaintiff asserts the Court should reject the "finding that the ALJ properly evaluated the opinions from PA-C Slaughter and Dr. Martinez." (Doc. 29 at 1, emphasis omitted.)  In addition, Plaintiff maintains that "[t]he ALJ failed to include work-related limitations in the [residual functional capacity] consistent with the nature and intensity of Plaintiff's limitations and failed to offer any reason for rejecting Plaintiff's subjective complaints." (*Id.* at 7, emphasis omitted.)

Plaintiff contends the magistrate judge "analyzes the objective findings where the ALJ did not, and this post-hoc attempt to shore-up the ALJ's decision should not be upheld." (Doc. 29 at 2.)  Plaintiff contends that with supportability, the ALJ must consider "the relevant objective medical evidence and supporting explanations for a medical source opinion," and "[t]he ALJ's analysis wholly dismissed PA-C Slaughter's narrative explanations interpreting her objective findings and the underlying basis for her opined limitations." (*Id.*, citation omitted.)  In addition, Plaintiff contends the ALJ did not "reconcile the conflicting evidence, and erroneously relied

1  upon the normal findings to support her conclusion while disregarding the abnormal signs." (*Id.*
2  at 3, citing AR 34 [Doc. 19-1 at 39].) Furthermore, Plaintiff contends the magistrate judge failed
3  to address her assertion that the ALJ did not properly address consistency, and instead the
4  magistrate judge "conflate[d] the ALJ's supportability analysis with a consistency finding,
5  asserting that PA-C [S]laughter's opinion is inconsistent with her own varied physical
6  examinations." (*Id.* at 4, citing Doc. 28 at 10.) According to Plaintiff, "Neither the ALJ nor the
7  Magistrate Judge's findings consider whether PA-C Slaughter's opinion is consistent with the
8  record as a whole, including the examinations of other providers." (*Id.*)
9  Plaintiff also asserts, "Both Defendant's brief and Magistrate Judge's findings re-write the
10 ALJ's analysis of Dr. Martinez's opinion, explaining that the findings that were normal on the
11 examination were sufficient to support the ALJ's conclusion." (Doc. 29 at 5, emphasis omitted.)
12 However, Plaintiff maintains the ALJ failed "to acknowledge and consider" evidence supporting
13 the limitations identified by Dr. Martinez, including her observations during the consultative
14 examination and conclusion that the "testing results suggest difficulty with sustained effort and
15 attention due to depressive symptoms." (*Id.* at 6.) Plaintiff argues that with the consistency
16 factor, the ALJ drew "a false equivalence between the ability to participate in well-established
17 relationships and the ability to work with coworkers and serve the public." (*Id.* at 6, citing *Owen*
18 *v. Astrue*, 2009 WL 5218008, at *8 (C.D. Cal. Dec. 31, 2009), *Smith v. Califano*, 637 F.2d 968,
19 971 (3rd Cir. 1981).)
20 Finally, Plaintiff maintains the ALJ erred in discounting her subjective complaints
21 because "the ALJ merely offered a summary of treatment with various references to objective
22 findings, and stated how the objective findings were accommodated in the RFC." (Doc. 29 at 7,
23 citing AR 38-40 [Doc. 19-1 at 43-45].) Plaintiff contends, "unlike the Magistrate Judge's post-
24 hoc analysis, the ALJ offered no explanation as to how the evidence of record contradicts
25 Plaintiff's specific allegations of pain and functional limitations." (*Id.* at 7, citing *Facey v.*
26 *Comm'r of Soc. Sec.*, 2021 WL 1212649, at *14 (E.D. Cal. Mar. 31, 2021).) Plaintiff argues that
27 the Court should not accept a post-hoc analysis, because "[a]llowing a decision to stand because
28 an ALJ summarized evidence elsewhere in the Decision, which an ALJ does in every case, makes

the procedural protections given to Plaintiff illusory." (*Id.* at 8, emphasis omitted.) Therefore, Plaintiff concludes the matter should be remanded for further proceedings. (*Id.*)

## III. Discussion and Analysis

A district judge may "accept, reject or modify, in whole or in part, the findings and recommendations..." 28 U.S.C. § 636(b)(1). If objections are filed, "the court shall make a de novo determination of those portions of the report or specified proposed finding or recommendations to which objection is made." *Id.* A de novo review requires the court to "consider[] the matter anew, as if no decision had been rendered." *Dawson v. Marshall*, 561 F.3d 930, 932 (9th Cir. 2009).

### A. Evaluation of medical opinions

The regulations direct ALJs to determine how persuasive a medical opinion is according to the following factors: supportability, consistency, relationship with the claimant, specialization, and other factors showing the medical source's "familiarity with … other evidence in the record or an understanding of [the] disability program's policies and evidentiary requirements." 20 C.F.R. §§ 416.920c(c)(1)-(5). An ALJ is required to discuss supportability and consistency, which are the most important factors "when evaluating the persuasiveness of medical opinions." *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(a)); *see also* 20 C.F.R. § 416.920c(b)(2) ("we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but are not required to, explain how we considered the [remaining] factors in paragraphs (c)(3) through (c)(5) of this section…").

The supportability inquiry is an assessment of "the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods*, 32 F.4th at 791-792 (internal quotation marks omitted). The regulations provide: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). Consistency compares an opinion with other evidence to determine its

persuasiveness. *See Woods*, 32 F.4th at 792. With the "consistency" factor, the regulations explain: "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2). The Ninth Circuit observed that an ALJ must explain how both the supportability and consistency factors were considered, and "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

### 1. Opinion of Slaughter, PA-C

As the ALJ observed, Slaughter completed a physical residual functional capacity assessment form in which she opined:

> [T]he claimant could lift and or carry less than ten pounds both frequently and occasionally. She could sit for less than six hours in a normal workday and could not sit for longer than forty-five minutes at any one time. The claimant's pushing and pulling with the upper and lower extremities was limited to the weight restrictions given above. PAC Slaughter opined the claimant did not have the strength to constantly lift, push, pull, walk, stoop, bend, or engage in repetitive movements. The claimant could occasionally climb ramps and stairs, and stoop, but could never balance, crouch, kneel, crawl, or climb ladders, ropes, or scaffolds. PAC further found the claimant had limited reaching in all directions. The claimant should avoid even moderate exposure to humidity and noise but should avoid all exposure to temperature extremes, wetness, vibration, pulmonary irritants, and hazards.

(Doc. 19-1 at 47, citing Exh. 16F/2-9 [Doc. 19-1 at 941-948].) The ALJ found that "Slaughter's opinion [was] not persuasive." (*Id.* at 46.) The ALJ explained this conclusion as follows:

> PAC Slaughter supported her opinion with her exam findings, including the claimant's symptoms from her rheumatoid arthritis, lupus, and degenerative disc disease in her thoracic and lumbar spine. PAC Slaughter's records do not corroborate her extensive limitations, particularly from an objective standpoint. PAC Slaughter relies on subjective allegations that are rarely, if ever, documented in her own notes. The evidence of her varied physical exams is inconsistent with PAC Slaughter's opinion. For example, the claimant's varied range of motion in her spine is inconsistent with finding she can never balance, crouch, kneel, or crawl. Additionally, the stiffness and numbness in her wrists and hand is more consistent with the more specific finding of the residual functional capacity that she can frequently perform manipulative activities.

(*Id.* at 46-47.)

When considering the supportability factor, the ALJ should consider the extent to which a medical source supports her own opinion and explains the objective medical evidence. *See* 20 C.F.R. § 416.920c(c)(1). The ALJ acknowledged that "Slaughter supported her opinion with her exam findings," but found the opinion lacked support in the examination records. (Doc. 19-1 at 46-47.) As an example, the ALJ identified Plaintiff's range of motion in her spine as a reason for finding the opinion lacked supportability, finding her range of motion was inconsistent with the opinion Plaintiff could never balance, crouch, kneel, or crawl. (*Id.* at 47.) Notably, however, Slaughter did not indicate the limitations were based upon Plaintiff's range of motion. (*See id.* at 943-944.) Slaughter opined Plaintiff "doesn't have the strength"—indicating she could lift and carry less than 10 pounds occasionally—and that Plaintiff could not "consistently, lift, push, and pull." (*Id.* at 943.) The ALJ did not acknowledge Plaintiff's lack of strength as the explanation offered by Slaughter for physical limitations and did not address to what extent Slaughter's own treatment records did not support such strength-related limitations.[2] (*See id.* at 42.) Therefore, the ALJ failed to properly address the supportability factor.[3]

Furthermore, the ALJ does not clearly address the consistency factor, which requires the ALJ to explain the extent to which the limitations identified by Slaughter are inconsistent with other evidence in the record, including the opinions from other medical sources and nonmedical evidence. *See* 20 C.F.R. § 416.920c(c)(2); *Woods*, 32 F.4th at 792. Although the ALJ stated that "varied physical exams [were] inconsistent" with Slaughter's opinion, there is nothing in the ALJ's discussion for the Court to determine whether the unidentified exams were performed by providers other than Slaughter. (*See* Doc. 19-1 at 47.) Consequently, the Court is unable to find

---

[2] In the RFC, the ALJ adopted the limitation that Plaintiff could "frequently lift/carry less than 10 pounds," but found Plaintiff could "occasionally lift/carry 10 pounds." (Doc. 19-1 at 42.)

[3] The ALJ referred to "varied physical exams" as inconsistent with Slaughter's opinion. (Doc. 19-1 at 47.) The magistrate judge identified findings concerning Plaintiff's gait and spinal tenderness that the magistrate judge found "inconsistent with PAC Slaughter's apparent indication that Plaintiff could not stand and/or walk for any period of time." (Doc. 28 at 9-10.) However, Slaughter skipped the check-box question concerning how long Plaintiff could stand and/or walk, and indicated in her narrative explanation that Plaintiff did not "have the strength to consistently… walk." (Doc. 19-1 at 942.) Thus, it does not appear that Slaughter believed Plaintiff could not stand and walk for *any* period of time. Regardless, the ALJ did not reference Slaughter's opinions concerning Plaintiff's ability to stand and walk—or the examination findings identified by the magistrate judge—in addressing the supportability of the medical opinion. (*See id.* at 46-47.) The broad reference to "physical exams" is insufficient for the Court to find the analysis by the ALJ sufficiently addresses the supportability factor.

the ALJ properly discussed the consistency factor. *See Woods*, 32 F.4th at 792 (the factor addresses "the extent to which a medical opinion is consistent with the evidence from *other medical and nonmedical sources*") (internal quotation marks omitted, emphasis added); *see also Kitchen v. Kijakazi*, —F.4th—, 2023 WL 5965704 at *5 (9th Cir. Sept. 14, 2023).

### 2. Opinion of Dr. Martinez

Dr. Marilyn Martinez performed a psychological consultative examination of Plaintiff, and the ALJ summarized the findings as follows:

> She opined that the claimant was unable to sustain or obtain continued employment at the time of the exam. She found the claimant would have significant distress in multiple areas including occupational, social, and relational. The claimant's symptoms would also cause significant impairment socially and occupationally. The claimant did not engage in social exchanges with others and found the day-to-day requirements of sustained employment. More specifically, Dr. Martinez opined the claimant had a moderate impairment in doing detailed and complex instructions and performing work activities without special or additional supervision. The claimant's anxiety caused a marked impairment in her ability to maintain concentration, attention, persistence, and pace. Dr. Martinez found the claimant had a marked impairment in maintaining regular attendance in the workplace or performing work activities consistently due to the pain. The claimant also had a marked impairment in relating and interacting with coworkers or the public as well as a marked impairment in associating with day- to-day work activity due to her pain.

(Doc. 19-1 at 48.) The ALJ found that the opinion of Dr. Martinez was "not persuasive." (*Id.*) The ALJ found the "psychiatric exam [did] not support her opinion." (Doc. 19-1 at 48.) According to the ALJ, "[t]he exam was entirely normal and did not support any moderate or marked limitation in any area." (*Id.*) The ALJ opined: "Dr. Martinez supported her opinion by referencing the claimant's pain. The claimant's pain is subjective and beyond a psychologists [sic] purview to evaluate." (*Id.*) The ALJ also determined:

> The evidence of the claimant's daily activities is inconsistent with Dr. Martinez's opinion. For example, the claimant cares for her thirteen-year-old son, which is inconsistent with finding significant impairments in her performing activities without special instructions or that were complex or detailed in nature. Additionally, the claimant enjoys watching movies with family and friends, which is inconsistent with Dr. Martinez's severe restrictions on the claimant's interactions with others.

(*Id.*)

### a. Supportability

8

The ALJ did not acknowledge Dr. Martinez's opinion that Plaintiff's insight appeared "to be limited" in finding the opinion lacked support from the consultative examination. (Doc. 19-1 at 511) Dr. Martinez also believed Plaintiff "present[ed] with excessive anxiety and worry," which she described as "associated with being easily fatigued, difficulty concentrating, sleep disturbance and general disease." (*Id.* at 512.)  Dr. Martinez diagnosed Plaintiff with generalized anxiety disorder and major depressive disorder- recurrent. (*Id.*)  The ALJ erred by ignoring these findings, and failing to address the extent to which they may support Dr. Martinez's opinion that Plaintiff had "marked impairment due to anxiety" with the "[a]bility to maintain concentration and attention, persistence and pace." (*Id.* at 48, 512.)

Furthermore, as the magistrate judge determined, the ALJ's rejection of the opinion on the grounds that Dr. Martinez is a psychiatrist and pain is beyond her purview was not proper. (*See* Doc. 28 at 13, n.4, citing *Farris v. Barnhart*, 147 Fed. App'x 638, 639 (9th Cir. 2005).)  As the Ninth Circuit explained in *Farris*, an ALJ may not reject a medical opinion as "beyond the range of [a physician's] medical specialty." *Id.*, citing *Lester v. Chater*, 81 F.3d 821, 833 (9th Cir. 1996); *see also Bray v. Berryhill*, 2018 U.S. Dist. LEXIS 9747, at *5 (W. Wash. Jan. 22, 2018) (citing *Farris* and finding an ALJ "erred as a matter of law" in rejecting an examining physician's opinion "as outside the scope of [his] expertise or examination").

*b.    Consistency*

The ALJ found Plaintiff's daily activities— including her ability to care for her 13-year-old son and watch movies with family and friends—were inconsistent with the limitations identified by Dr. Martinez. (Doc. 19-1 at 48.)  In finding Plaintiff's activities supported the ALJ's decision, the magistrate judge observed that "Plaintiff indicated that she was able to pay bills and handle cash, go out alone, and *had no difficulty completing household tasks* or making decisions." (Doc. 28 at 13, citing AR 505 [Doc. 19-1 at 510], emphasis added.)  However, the cited record indicates that Plaintiff "report[ed] *requiring assistance* with getting dressed, taking a shower, housecleaning, cooking, shopping and cutting her toenails." (Doc. 19-1 at 510, emphasis added.) In Plaintiff's Function Report, she reported that her oldest son assisted with the laundry, grocery shopping, cleaning, cooking, and taking her other son to school. (*Id.* at 324.)  Likewise, Plaintiff

reported at the hearing that she required assistance with housework, washing dishes, laundry, and sweeping; and in-home service worker did "all the housework." (*Id.* at 149-150.) Thus, the record does not support a conclusion that Plaintiff had "no difficulty completing household tasks," and this does not support the ALJ's determination.

In addition, it is not clear there is an actual conflict between Plaintiff's ability to watch movies with family and friends and her ability to engage with the public and coworkers. Courts have repeatedly rejected findings that a claimant's ability to interact with familiar individuals relates to the ability to engage with those who are not familiar. *See, e.g., Juniel v. Saul,* 2021 WL 2349878, at *11 (E.D. Cal. June 9, 2021) (positive interactions with family and the ability to visit a friend did not conflict with the social limitations identified by a physician— regarding the ability to interact with the public, coworkers, and peers— because "the activities identified do not occur in public, and the ALJ … did not find Plaintiff engaged in such activities on a sustained basis"); *Owen v. Comm'r of Soc. Sec.*, 2018 WL 3917841, at *5 (E.D. Cal. Aug. 16, 2018) ("largely isolated and infrequent activities with family… do not translate to an ability to relate to the general public who are strangers on a continuous basis"); *Blake R. v. Kijakazi*, 2022 WL 4553125, at *10 (S.D. Cal. Sept. 29, 2022) ("importantly, having friends and romantic relationships does not bear directly on the ability to 'relate to and work with supervisors, co-workers, and the public'"); *Stacy S. v. Comm'r of Soc. Sec.* 2020 WL 5988493, at *4 (W.D.Wash. Oct. 9, 2020) (the "limited circle of interaction" with friends or family "does not reasonably establish Plaintiff can engage in social interaction in a work place"). Therefore, Plaintiff's ability to watch movies with family and friends does not support the ALJ's consistency analysis.

**B.     Evaluation of Plaintiff's subjective statements**

In evaluating a claimant's statements regarding the severity of her symptoms, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if there is no evidence of malingering, the ALJ must set forth clear and convincing reasons for rejecting subjective complaints. *Id.* at 1036.

The ALJ summarized hearing testimony and determined Plaintiff's medically determinable impairments—which included bursitis/tendonitis of the bilateral shoulders, osteoarthritis of the knees, degenerative joint disease and disc disease in the spine, inflammatory arthritis, and undifferentiated connective tissue disease—"could reasonably be expected to cause the alleged symptoms." (Doc. 19-1 at 43.) However, the ALJ found her "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record..." (*Id.*) The ALJ then concluded "the medical record is not entirely consistent with the degree of limitation alleged by the claimant," and summarized the medical record related to her various impairments. (*Id.* at 43-45.) However, the ALJ did not link Plaintiff's hearing testimony to his summary of the medical record, such as by identifying any inconsistent statements between her testimony and reports to physicians.

Importantly, unless the ALJ links the claimant's testimony to "the observations an ALJ makes as part of the summary of the medical record," the summary is not sufficient to reject a claimant's subjective statements. *Argueta v. Colvin*, 2016 WL 4138577, at *13 (E.D. Cal. Aug. 3, 2016), citing *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Thus, a district court may not review an ALJ's summary of the record to identify reasons for rejecting a claimant's testimony. For example, in *Brown-Hunter*, the claimant argued the ALJ failed to provide clear and convincing reasons for rejecting her symptom testimony. *Id.*, 806 F. 3d 487, 491 (9th Cir. 2015). The district court identified inconsistencies in the ALJ's summary of the medical record that supported rejecting Plaintiff's statements. *Id.* On appeal, the Ninth Circuit determined the ALJ failed to identify the specific testimony she found not credible and did not link that testimony to support the adverse credibility determination. *Id.* at 493. The Court explained that even if the district court's analysis was sound, the analysis could not cure the ALJ's failure. *Id.* at 494.

The Ninth Circuit also determined an ALJ erred by discrediting symptom testimony as "not entirely consistent with the medical evidence," without linking the testimony and medical evidence in *Holcomb v. Saul*, 832 Fed. Appx. 505 (9th Cir. Dec. 28, 2020). In *Holcomb*, the ALJ summarized the claimant's testimony and "determined that his symptom testimony was not 'entirely consistent with the medical evidence and other evidence in the record.'" *Id.* at 506. The

11

Court found that "the ALJ discussed relevant medical evidence but failed to link Holcomb's symptom testimony to specific medical records and explain why those medical records contradicted his symptom testimony." *Id.* Further, the Court observed that "the ALJ never mentioned Holcomb's symptom testimony while discussing the relevant medical evidence." *Id.* Because the Court is constrained to the reviewing reasoning identified by the ALJ for discounting testimony, the Court found the "failure to specific the reasons for discrediting Holcomb's symptom testimony was reversible error." *Id.* (citing *Brown-Hunter*, 806 F.3d at 494).

Likewise, here, the ALJ offered little more than a summary of the medical evidence, and he did not identify the hearing testimony from Plaintiff that conflicted with this summary. Because the ALJ failed to link the medical record to Plaintiff's testimony, the ALJ failed to reject limitations to which Plaintiff testified—including exertional, postural, and manipulative limitations— and the Court is unable to cure the error by conducting its own analysis of the evidence. *See Brown-Hunter*, 806 F. 3d at 494; *Holcomb*, 832 Fed. App'x. at 506; *see also Marie A.G. v. Kijakazi*, 2023 U.S. Dist. LEXIS 74607, at *11 (C.D. Cal. Apr. 28, 2023 ("In the absence of links between the ALJ's findings and Plaintiff's testimony, the Court may not infer that the ALJ's summary of the treatment record contained actual reasons for discounting Plaintiff's testimony and review them as such").[4]

**IV.      Conclusion and Order**

Pursuant to 28 U.S.C. § 636 (b)(1)(c), this Court conducted a de novo review of the case. Having carefully reviewed the entire matter, the Court finds the ALJ failed to apply the proper legal standards and declines to affirm the decision of the ALJ.

The decision whether to remand a matter for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g) or to order immediate payment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Plaintiff requests the

---

[4] For this reason, the Court declines to infer that the ALJ properly considered factors identified by the magistrate judge within the medical summary, including Plaintiff's relief from treatments and failure to comply with treatment. (*See* Doc. 28 at 15-16.) On the other hand, the Court notes that Plaintiff's treatment may not be properly characterized as "conservative" because her treatment included lumbar injections. *See, e.g., Gilliland v. Saul*, 821 Fed. App'x 798, 799 (9th Cir. 2020) (finding the ALJ erred in characterizing treatment as conservative where the plaintiff received "several pain medications and trigger point injections"); *Keith D. v. Kijakazi*, 2023 U.S. Dist. LEXIS 134451 (C.D. Cal. Aug. 1, 2023) ("injections are generally not conservative treatment").

matter be remanded for further proceedings. (Doc. 23 at 21.) Notably, except in rare instances, when a court reverses an agency determination, the proper course is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004) (citing *INS v. Ventura*, 537 U.S. 12, 16 (2002)).

Remand for additional proceedings is necessary, because the supportability and consistency of the medical opinions of PA-C Slaughter and Dr. Martinez must be analyzed further before a determination of disability may be made. *See* 20 C.F.R. § 416.920c(c)(1); *see also Del Corso v. Kijakazi*, 2022 WL 2193388, at *7 (E.D. Cal. June 16, 2022) (remanding for further analysis of the supportability and consistency of medical opinions, where the inconsistencies identified by the ALJ were insufficient under the new regulations); *Emily B. v. Kijakazi*, 2022 WL 17224299, at *6 (E.D. Wash. Sept. 14, 2022) (observing that the revised regulations rejected application of the Ninth Circuit's "credit-as-true" doctrine to medical opinions and the commentary expressly stated: "it is never appropriate under our rules to 'credit-as-true' any medical opinion").

Similarly, a remand for additional analysis regarding the subjective statements of a claimant is an appropriate remedy. *See, e.g., Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995) (remanding the case "for further proceedings evaluating the credibility of [the claimant's] subjective complaints…"); *Del Corso*, 2022 WL 2193388, at *7 (finding further development of the record was also appropriate where "the ALJ failed to properly consider plaintiff's testimony"); *Marie*, 2023 U.S. Dist. LEXIS 74607, at *11-12, 14 (remanding for further proceedings where the summary of the medical record was not properly linked to the plaintiff's testimony). Accordingly, a remand for further proceedings is appropriate in this action.

Based upon the foregoing, the Court **ORDERS**:

1. The Court declines to adopt the Findings and Recommendations (Doc. 28).
2. Plaintiff's motion for summary judgment (Doc. 23) is **GRANTED** and the decision of the Administrative Law Judge is vacated.
3. Defendant's cross-motion for summary judgment (Doc. 26) is **DENIED**.
4. The matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for

further proceedings consistent with this decision.

5. The Clerk of Court is directed to enter judgment in favor of Plaintiff Maricela Beltran and against Defendant Kilolo Kijakazi, Acting Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **September 21, 2023**

*/s/ Jennifer L. Thurston*
UNITED STATES DISTRICT JUDGE